# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KIILU WASHINGTON, | ) | 1:11-cv-00264 GSA PC |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING ACTION |
| | ) | FOR FAILURE TO STATE A CLAIM |
| v. | ) | UPON WHICH RELIEF COULD BE |
| | ) | GRANTED |
| | ) | |
| MATTHEW CATE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.   Screening Requirement

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1]

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

## II.   Plaintiff's Claims

### A.   Summary of Complaint

---

[1] Plaintiff filed a consent to proceed before a magistrate judge on April 13, 2011 (ECF No. 6).

1

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Lancaster State Prison, brings this lawsuit against correctional officials employed by the CDCR.  The event that gives rise to this lawsuit occurred while Plaintiff was housed at CSP Corcoran.  Plaintiff names the following individual defendants:  CDCR Secretary Matthew Cate; Inmate Appeals Branch Chief S. Heeneway; Appeals Examiner K. Allen; Chief Deputy Warden C. Gipson; Associate Warden M. Jennings; Correctional Counselor C. Hicinbothom; Correctional Counselor R. Swearingen; Does 1-10.

On February 13, 2010, Plaintiff, a Muslim, alleges that he and his wife were married via religious ceremony in the visiting room at CSP-Corcoran.  In March of 2010, Plaintiff applied for a conjugal visit in order to consummate his marriage "pursuant to his religious tenet in exercising his religion by the Holy Qur-an."  On April 19, 2010, Defendant Swearingen denied Plaintiff's request on the ground that Plaintiff is an inmate serving a life sentence.[2]  On April 30, 2010, Plaintiff filed an inmate grievance, challenging the decision.  Plaintiff's grievance was denied.  On May 2, 2010, Plaintiff re-submitted his appeal, "where both Defendants D. Hicinbothom and M. Jennings denied Plaintiff's appeal and request for a family visit."  On June 14, 2010, Plaintiff submitted his appeal for Second Level Review, which was denied by Defendant Gipson.  On July 30, 2010, Plaintiff submitted his appeal at the Final, Director's Level of Review.  Plaintiff's appeal was denied on the ground "that the denial was in accordance with legitimate penological interest per CCR Section 3270, and 3177, adding that the Department's requirement to maintain safety for the inmate population, staff, and the public outweigh Plaintiff's Constitutional Rights and the rights under the Religious Land Use and Institution Persons Act. [sic]." [3]

---

[2] Title 15 of the California Code of Regulations, Section 3177 (b)(2) prohibits conjugal visits for inmates serving a sentence of life without the possibility of parole, or a sentence without a parole date established by the Board of Parole Hearings.

[3] Section 3270 is a statement of general principle.  In its entirety, Section 3270 states that: "The primary objectives of the correctional institutions are to protect the public by safely keeping persons committed to the custody of the Secretary of Corrections and Rehabilitation, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities.  Consistent effort will be made to insure the security of the institution and the effectiveness of the treatment programs within the framework of security and safety.  Each employee must be trained to understand how physical facilities, degree of custody classification, personal, and

Plaintiff sets forth claims under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA).   Plaintiff alleges that the CDCR's policy "exaggerates safety concerns regarding family visits for prisoners with a life and/or life without parole sentence, without any evidence to substantiate their contentions."

### B.      First Amendment

The Free Exercise Clause of the First Amendment provides, "Congress shall make no law . . .prohibiting the free exercise" of religion U.S. Const., Amend. I.  Any assertion that § 3177 runs afoul of that clause is defeated by the U.S. Supreme Court's decision in Employment Division v. Smith, 494 U.S. 872 (1990).  There, the Court held that generally-applicable laws that incidentally burden a religious practice do not violate the Free Exercise Clause.  494 U.S. 878; Cutter v. Wilkinson, 544 U.S. 709, 714 (2005).  Because section 3177 does not prohibit conjugal visitation solely for Muslim life inmates, but all life inmates regardless of religion, it does not violate the Free Exercise Clause.  Turner v. Safley, 482 U.S. 78, 95 (1987)(holding that a prison inmate retains those constitutional rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system); Noguera v. Rowland, No. 90-15404, 1991 WL 148766 (9th Cir. July 29, 2991)(holding that a condemned inmate's claim to a right to conjugal visits under the Free Exercise Clause failed because the inmate could not "show that the prison regulation prohibiting conjugal visits for condemned inmates is not rationally related to a valid penological interest.")    Plaintiff's First Amendment claim therefore fails.

### C.      Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.  When analyzing a discrimination claim under the Fourteenth Amendment, we must first determine the appropriate level of scrutiny to be applied.  If the rule disadvantages a suspect

---

operative procedures affect the maintenance of inmate custody and security.  The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department."

class or impinges upon a fundamental right, the court will examine it by applying a strict scrutiny standard. If no such suspect class of fundamental rights are involved, the conduct or rule must be analyzed under a rational basis test. Giannini v. Real, 911 F.2d 354, 258 (9th Cir. 1990). Prisoners serving an LWOP term do not constitute a suspect class and there is no fundamental right to conjugal visits. Gerber v. Hickman, 291 F.3d 617, 621-22 (9th Cir. 2002)(stating that "it is well settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits" and applying rational basis scrutiny to a life prisoner's claim that denial of conjugal visits violated the Equal Protection Clause). Accordingly, the Court reviews § 3177 under the rational basis test. Under that test, § 3177's discrimination against prisoners serving an LWOP term does not violate the Equal Protection Clause if it bears some rational relationship to a conceivable state purpose. Lupert v. Cal. State Bar, 761 F.2d 1325, 1328 (9th Cir. 1985). In Gerber, the Ninth Circuit concluded that "it is completely rational for prison officials to decide that maintaining contact with those outside prison is more important for inmates who will eventually be released from prison than for those ineligible for parole." 291 F.3d at 623. Accordingly, the court affirmed the dismissal of an inmate's claim that California's prohibition on conjugal visits for life prisoners violated equal protection. Id. at 623-24. Defendants further identify the conceivable legitimate state interest in institutional security. See Block v. Rutherford, 468 U.S. 576, 586 (1984)(noting the myriad security problems presented by contact visits). "That there is a valid, rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant extended discussion." Id. Thus, Plaintiff's equal protection challenge to § 3177 fails.

### D. RLUIPA

As relevant here, RLUIPA provides that "no [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling government interest" by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. §2000cc-5(7)(A). A "substantial burden" is one that imposes a significantly great

restriction or onus on religious exercise.  San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034-35 (9th Cir. 2004).

    Neither the U.S. Supreme Court nor the Ninth Circuit has yet addressed whether a sincerely held religious belief necessitating conjugal visits must be accommodated under RLUIPA.  In Shields v. Foston,, No. 2:11-cv-0015 JAM EFB, 2013 WL 3456964 (E. D. Cal. Jul. 9, 2013), the court surveyed the district court decisions addressing the question.   See  Pouncil v. Tilton, 704 F.3d 568 (9th Cir. 2012)(addressing a statute of limitations issue but not the merits in a case challenging denial of conjugal visits under RLUIPA.) Fuller v. Cate, 481 Fed. Appx. 413 (9th Cir. 2012)(concluding that the attachments to plaintiff's complaint demonstrated that the prohibition on conjugal visits for LWOP inmates did not substantially burden plaintiff's right to enter into a valid Islamic marriage).  The lower courts that have addressed the issue appear, thus far, to uniformly conclude that such beliefs must give way to the need for institutional security.  Robertson v. Kansas, No. 07-3162-SAC, 2007 WL 4322781 (D. Kan. Dec. 10, 2007)(summarily denying Plaintiff's claim for conjugal visits under RLUIPA because such visits would burden prison officials and present security risks); Marsh v. Granholm, No. 2:05-cv-134, 2006 WL 2439760 (W. D. Mich., Aug. 22, 2006)(granting summary judgment on plaintiff's RLUIPA claim because: (1) plaintiff, a murder convict, raised particular security concerns regarding his continued incarceration, (2) plaintiff's incarceration was at odds with his request to engage in private heterosexual procreation, and (3) the denial of  conjugal visits was the least restrictive means of furthering the government's interest in institutional safety).

    The Foston  court notes that courts have consistently held that loss of sexual intimacy with a spouse is simply "part  and parcel" of imprisonment.  Gerber v. Hickman, 291 F.3d 617, 620-22; see also  Turner v. Safley, 482 U.S. 78, 97 (1987)("The right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration."); Hernandez v. Coughlin , 18 F.3d 133,137(2nd Cir. 1994)("[E]ven though the right to marriage is constitutionally protected for inmates, the right to marital privacy and conjugal visits while incarcerated is not."); Lucas v. Tilton, No. 1:08-cv-00515 AWI GSA, 2010 WL 431737 (E.D.  Cal. Feb. 2, 2010)(concluding that the balance of equities did not support plaintiff's request for a preliminary

injunction allowing Plaintiff to have a conjugal visit with his wife "because the loss of intimate association is a well-known aspect of being imprisoned for conviction of a crime.").

Plaintiff does not allege any facts indicating that Defendants in any way prohibited him from entering into a valid marriage under California law.  Plaintiff levels a conclusory allegation that CDCR policy is "bias and discriminatory" and that Defendants "fail to provide any information of a legitimate penological justification, as to how Plaintiff's length of sentence would breach the safety or security of the inmate population, staff, or the public, by the consummation of his marriage, or how the Department's requirements outweigh Religious Statute and Constitutional Law."  The issue in this matter is clear.  Plaintiff alleges that he was denied a conjugal visit because of his status as life prisoner.  Plaintiff alleges that the denial was pursuant to state regulation, and that Plaintiff was informed that the denial was based upon the regulation and security concerns of the institution. That Plaintiff was denied a conjugal visit does not state a claim for relief under RLUIPA.

### III.     Conclusion and Order

Plaintiff's complaint does not state any cognizable claims under section 1983.  Plaintiff's claims arise from the denial of a conjugal visit pursuant to state regulation denying such visits for life prisoners.  Such an allegation fails to state a claim under the First and Fourteenth Amendments and RLUIPA.  Because the Court finds that this deficiency is not capable of being cured by amendment, the Court HEREBY ORDERS that this action is dismissed, with prejudice, for failure to state a claim.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).   The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated:   **January 31, 2014**              **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE